AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
## Southern District of Alabama

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with ▮▮▮▮@yahoo.com and ▮▮▮▮@yahoo.com that is stored at premises controlled by Yahoo! Inc.

Case No. MJ 17-0015-B

Filed under seal

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of government property |
| 18 U.S.C. § 1343 | Wire fraud |

The application is based on these facts:

See affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Andrea Covert, Special Agent, NCIS
*Printed name and title*

Sworn to before me and signed in my presence. Attestation acKnowleJsed Pursuant to FRCP 4.1(b)(4).

Date: Feb. 7, 2017

*Judge's signature*

City and state: Mobile, Alabama

Sonja F. Bivins, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ▓▓▓▓▓@YAHOO.COM AND ▓▓▓▓▓@YAHOO.COM THAT IS STORED AT PREMISES CONTROLLED BY YAHOO! INC. | Case No. MJ 17-0015-B<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrea Covert, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Yahoo! Inc. ("Yahoo!"), an e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo! to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I have been a Special Agent with the Naval Criminal Investigative Service for approximately 16 years. I am a Certified Fraud Examiner as designated by the Association of Certified Fraud Examiners. During the course of my employment, I have conducted numerous

investigations involving violations of federal law, including violations of Title 18, United States Code, relating to fraud schemes committed against the government. In the course of my duties, I have become familiar with the techniques, strategies, and behaviors of individuals who have committed fraud schemes, and who seek to conceal such illicit activities from detection.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 641 (theft of government property) and 1343 (wire fraud) have been committed by Christopher Aragon, Teneshia Aragon, and Dana Davis (together, the "Targets"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B. I am the lead case agent in the investigation described below.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses in the course of an ongoing federal investigation. This affidavit is intended to show merely that there is sufficient

2

probable cause for the requested warrant and does not set forth all of the information obtained during the course of the investigation.

7. The Targets allegedly engaged in an embezzlement scheme to steal money from the United Stated Marine Corps through the use of a Citibank government credit card to make fraudulent payments to Runway Cafe, a restaurant business in Mobile, Alabama, unbeknownst to the Marine Corps. The government credit card was issued lawfully to an individual Marine cardholder, who was authorized to use the credit card to pay vendors that provided food and lodging to Marine Corps personnel conducting official Marine Corps business. The cardholder was unaware the government credit card was being used unlawfully by an approving official to make payments to the Runway Cafe. As part of the scheme, the approving official submitted fraudulent invoices, forged audit memoranda, and fabricated personnel rosters to the Marine Corps without the cardholder's knowledge. In total, from October 2014 - July 2016, Runway Cafe received approximately $604,948.08 from the Marine Corps. The approving official retired in July 2016. A complete audit of all payments made to Runway Cafe is ongoing. A preliminary estimate of the total fraud loss is over $500,000.

8. During the scheme, Christopher Aragon was a Marine Corps Staff Sergeant assigned to the 3rd Force Reconnaissance Company in Mobile, Alabama. He was the supply chief and approving official for the government credit card. Christopher Aragon had a supervisory role over the cardholder, a Marine Corps Corporal who also worked in the supply department. Without the cardholder's knowledge, Christopher Aragon provided the cardholder with fraudulent documents to conceal the unlawful nature of the transactions with Runway Cafe. He also personally uploaded or directed the uploading of the fraudulent documents to the Memorandum Fiscal Services application. The Memorandum Fiscal Services application is used

3

by Marine Forces Reserve personnel to monitor activity on the government credit cards under its purview. Submission of supporting documents to the Memorandum Fiscal Services is a required step in the approval process for payment of the government credit card. Christopher Aragon retired from the Marine Corps on July 31, 2016.

9.  Teneshia Aragon is Christopher Aragon's wife. They live together in Mobile, Alabama. A bank account belonging to Teneshia Aragon received more than $300,000 from Runway Cafe during the course of the embezzlement scheme.

10. Dana Davis is the owner and sole proprietor of Runway Cafe, a restaurant in Mobile, Alabama.

11. Around August 10, 2016, the food services officer for the Marine Forces Reserve in New Orleans, Louisiana, notified the Naval Criminal Investigative Service that Marine Forces Reserve personnel had discovered an excessive amount of money being spent by one of their subordinate units, the 3rd Force Reconnaissance Company located in Mobile, Alabama. The Marine Forces Reserve ordered the 3rd Force Reconnaissance Company to conduct a review of its food expenses.

12. A review of food expenses for the months of April through July 2016 was conducted by the supply officer for the 3rd Force Reconnaissance Company. This review determined: 1) many of the Runway Cafe invoices did not correspond with official 3rd Force Reconnaissance Company activities and therefore did not support a legitimate need for food services; 2) the Runway Cafe invoices were for more meals than could be consumed by the number of Marines assigned to the 3rd Force Reconnaissance Company; 3) the personnel rosters reflecting the names of the 3rd Force Reconnaissance Marines who allegedly consumed the meals were fabricated; and 4) the Runway Cafe invoices contained unauthorized service fees.

13. My review of Christopher Aragon's Marine Corps email profile identified a PayPal transaction history for an account belonging to Christopher Aragon. The transaction history showed Christopher Aragon's PayPal account received a payment from a Runway Cafe PayPal account for $5,040 on June 2, 2016. Christopher Aragon's PayPal ID is ▇▇▇@yahoo.com. I believe that Christopher Aragon is the primary user of ▇▇▇@yahoo.com. Christopher Aragon applied for two loans from Navy Federal Credit Union, one on October 28, 2013 and the other on April 1, 2016. Both loan applications list Christopher Aragon's email address as ▇▇▇@yahoo.com.

14. The Runway Cafe PayPal account that made the $5,040 payment is associated with ▇▇▇@gmail.com.

15. My review of PayPal records identified $311,228 in payments made from a PayPal account registered to Dana Davis and associated with email address ▇▇▇@gmail.com to a PayPal account registered to Teneshia Aragon using email address ▇▇▇@yahoo.com. These payments occurred between April 2015 and July 2016. I believe that Dana Davis is the primary user of ▇▇▇@gmail.com and that Teneshia Aragon is the primary user of ▇▇▇@yahoo.com. PayPal account number ▇▇▇2414, which is linked to email address ▇▇▇@yahoo.com, is registered to Teneshia Jackson (aka Teneshia Aragon), with Teneshia Aragon's social security number, date of birth (▇▇▇), home address, and is linked to 3 bank accounts in which Teneshia and Christopher Aragon are joint account holders. PayPal account number ▇▇▇4033, which is linked to email address ▇▇▇@gmail.com, is registered to Dana Davis, with Dana Davis's social security number, date of birth, the business name "Runway Café", and

5

is linked to a bank account with Service 1 Federal Credit Union in which Dana Davis is the sole account holder.

16. On July 31, 2016, the cardholder received an apology letter via email from ███████@gmail.com. The letter, signed by Dana Davis, stated that Runway Café had accidently overcharged the 3rd Force Reconnaissance Company.

17. According to PayPal records, on August 10, 2016 a payment of $20,000 was sent from Teneshia Aragon's PayPal account associated with ███████@yahoo.com to Dana Davis's PayPal account associated with ███████@gmail.com.

18. On August 15, 2016, the government credit card was credited $20,000 by Runway Cafe. Sometime thereafter, Christopher Aragon contacted the cardholder to verify the government card had received the refund.

19. Based on my investigation, the Targets used email correspondence to facilitate their embezzlement scheme. The Targets established PayPal accounts linked to their email accounts. The PayPal accounts were either used to accept fraudulent payments from the Marine Corps and/or transfer money from the embezzlement scheme among the targets.

20. On November 14, 2016, a preservation letter was sent to Yahoo! Inc., requesting that the emails associated with the ███████@yahoo.com account be preserved. On December 2, 2016, a preservation letter was sent to Yahoo! requesting that the emails associated with the ███████@yahoo.com account be preserved. In general, an email that is sent to a Yahoo! subscriber is stored in the subscriber's "mail box" on Yahoo! servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Yahoo! servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Yahoo!'s servers for a certain period of time.

21. On November 22, 2016, a preservation letter was sent to Google Inc., requesting that the emails associated with the ▇▇▇▇▇▇▇▇@gmail.com account be preserved, Google reference No. 850462. In general, an email that is sent to a Google, Inc. subscriber is stored in the subscriber's "mail box" on Google, Inc. servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google, Inc. servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google, Inc.'s servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

22. In my training and experience, I have learned that Yahoo! provides a variety of on-line services, including electronic mail ("email") access, to the public. Yahoo! allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Yahoo!. During the registration process, Yahoo! asks subscribers to provide basic personal information. Therefore, the computers of Yahoo! are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo! subscribers) and information concerning subscribers and their use of Yahoo! services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

23. A Yahoo! subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Yahoo!. In my training and

7

experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

24. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

25. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

8

26. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

27. This application seeks a warrant to search all responsive records and information under the control of Yahoo!, a provider subject to the jurisdiction of this court, regardless of where Yahoo! has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Yahoo!'s possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.[1]

28. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct

---

[1] It is possible that Yahoo! stores some portion of the information sought outside of the United States. In Microsoft Corp. v. United States, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Yahoo! The government also seeks the disclosure of the physical location or locations where the information is stored.

9

under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

29. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Yahoo!, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Andrea Covert
Special Agent
Naval Criminal Investigative Service

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS 7th
DAY OF FEBRUARY 2017

SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

11